CATHY McINNIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McInnis v. Commissioner
Docket No. 10632-78.
United States Tax Court
T.C. Memo 1981-25; 1981 Tax Ct. Memo LEXIS 724; 41 T.C.M. (CCH) 744; T.C.M. (RIA) 81025; January 26, 1981. Cathy McInnis, pro se. Mark S. Feuer, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 148 in petitioner's Federal income tax for 1974 and an addition to tax in the amount of $ 7.40 under section 6653(a). [1] The issues for decision are: 1.Whether respondent correctly determined the amount of tip income *725 received by petitioner during 1974; and 2. Whether petitioner is liable for additions to tax under section 6653(a) for negligent underpayment of tax. FINDINGS OF FACT Petitioner Cathy McInnis was a legal resident, of Linden, Michigan, when she filed her petition. She timely filed her Federal income tax return for 1974 with the Internal Revenue Service Center, Covington, Kentucky. Petitioner was employed as a waitress by Wall's West, Inc. (Walli's), a restaurant in Flint, Michigan, from mid-April to mid-August 1974. Walli's is a family style restaurant located on a highway exit ramp. It primarily serves items such as hot dogs, hamburgers, french fries, sandwiches, steak, and chicken. Petitioner worked in the restaurant section, where no liquor was served, during the hours of 8 p.m. to 5 a.m. The work during the first and last hour of her shift consisted of setting up and cleaning the tables. Between the hours of 9 p.m. and 2 a.m., the clientele generally consisted of occasional highway travelers. After 2 a.m. until petitioner cleaned up, the restaurant was busy with the "after-bar crowd." Walli's paid petitioner an hourly wage which was below the minimum wage. To *726 comply with the minimum wage laws, the restaurant required each waitress, on a weekly basis, to acknowledge that she received a sufficient amount of tips varying between 25 cents and 30 cents per hour so that her total average hourly earnings did not fall below the minimum wage. The acknowledgment was placed by a rubber stamp on the back of each waitress' timecard. The waitress would then sign the acknowledgment. A space was provided on the timecard for the waitresses to report any tips received in excess of the minimum amounts. Any such additional tips reported were included on the waitress' W-2 form. Petitioner reported tip income earned at Walli's in the amount of $ 166.72. The tip income she reported was approximately 28 cents per hour worked. Petitioner has not shown whether she reported tips in addition to the minimum amount that petitioner was required to acknowledge to her employer. Respondent determined that petitioner received tips of $ 916.48 in excess of the amount reported. To compute this figure, respondent took the gross sales of the restaurant for 1974 ($ 1,196,680.74) and subtracted the amount of gross sales attributable to banquets, ($ 25,655.30), carryout *727 sales ($ 59,425), and liquor sales ($ 53,325.14), to derive the total amount of sales for food served in the restaurant ($ 1,058,275.30). Respondent multiplied this amount by an estimated average tip rate of 10 percent to arrive at total tips received by all waitresses during 1974 ($ 105,827.53). This amount was divided by the total number of hours worked by all waitresses (56,592.25) to reach the average hourly tip income for all waitresses ($ 1.87). Respondent multiplied this figure by the number of hours petitioner worked (579.25) to derive the total amount of tip income received by petitioner ($ 1,083.20). Because petitioner reported tips of $ 166.72, respondent determined that she received unreported tip income of $ 916.48. OPINION Tip income is includable in gross income under section 61(a). . In addition, taxpayers are required to maintain sufficient records to establish the exact amount of any tip income received. Sec. 6001; [2], affg. a Memorandum Opinion of this Court. *728 It is clear that petitioner has failed to maintain any records of the amount of tips she received. It is true that petitioner ptestified that she recorded the amount of tips on the back of her weekly timecard. Nevertheless, we do not think that the amount reported accurately reflected her tip income, but rather was merely the cumulation of the rubber stamp acknowledgments that petitioner received at least the requisite amount of tips to satisfy the minimum wage laws. Indeed, petitioner's testimony indicates that the amount acknowledged on her timecards and subsequently reported as income understated the actual amount received. Further, petitioner has introduced no evidence other than some partially contradictory testimony as to the true amount of tips received. Consequently, respondent is entitled to compute taxable income by such method that, in his opinion, clearly reflects income. See . Petitioner contends that respondent's method of computation was erroneous because he failed to consider that sales may vary by season. She argues that winter sales may be enhanced by traveling snowmobilers. She further argues *729 that summer sales may be decreased due to layoffs by General Motors, the town's largest employer. Consequently, petitioner concludes that respondent's calculations, which were based upon a pro rata division of annual sales, have no relation to the actual amount of tips received by her. We recognize that restaurants may be subject to seasonal sale patterns. Nevertheless, petitioner has introduced no evidence corroborating her argument that Walli's summer sales were proportionately less than the remainder of the year so as to invalidate respondent's computations. Even if we assumed that the summer sales were less, there is nothing in the record which would allow us to make a more accurate determination than that made by respondent.
Petitioner also criticizes respondent's calculations because respondent attributed an equivalent amount of sales, and thus tips, to each waitress-hour worked. She contends that her shift generated less sales than each of the other two shifts. Again, however, petitioner has failed to introduce any evidence supporting her assertion. Inded, the record indicates that, in a survey conducted at the restaurant in 1978, petitioner's shift was found to generate *730 more food sales per hour than each of the other shifts. Finally, petitioner argues that the 10 percent tip rate used by respondent was unreasonable. She contends that the majority of her customers consisted of the young "after-bar crowd" which she claims tips less. Petitioner estimated that she received tips of 7 to 8 percent of food sales. We agree with petitioner that the 10 percent tip rate used by respondent in his computations was higher than the actual tip percentage received by petitioner. Although the record contains conflicting evidence, we find petitioner's testimony that her tips average 7 percent to be credible on this issue. The type of food predominantly served was relatively inexpensive items such as hot dogs, hamburgers, and french fries. In addition, due to the hours worked by petitioner, many of her customers consisted of younger people returning from bars who generally did not tip as high as the clientele during coventional meal hours. [3] Thus, we think respondent should have used a tip rate of 7 percent rather than 10 percent in his calculations. *731 Section 6653(a) provides that if any part of any underpayment of income taxes is due to negligence or intentional disregard of rules and regulations, a penalty of 5 percent of the underpayment is to be applied. Petitioner has failed to introduce any evidence with regard to this issue. Indeed, the record reflects that while petitioner received tip income which she acknowledges is includable in gross income, she nevertheless failed to report the tips or maintain any records of them. Consequently, we must sustain respondent's imposition of the penalty. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
2. SEC. 6001. NOTICE OR REGULATIONS REQUIRING RECORDS, STATEMENTS, AND SPECIAL RETURNS. Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary or his delegate may from time to time prescribe. Whenever in the judgment of the Secretary or his delegate it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary or his delegate deems sufficient to show whether or not such person is liable for tax under this title.↩
3. Petitioner testified that-- if they [customers] came in and had a Walliburger and a Coke, that might come to $ 2.00. And they might leave a dime or fifteen cents. I doubt if they'd have cut loose with a quarter.↩